**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | |
|---|---|
| DARRIN JAMES TIERNAN, on behalf of himself and others similarly situated,<br><br>    Plaintiff,<br><br>vs.<br><br>NATIONAL CARRIERS, INC.,<br><br>    Defendant. | Case No.: 3:25-cv-1249-L-BT (SAL) (RAR)<br><br>COLLECTIVE AND CLASS ACTION |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' PRE-DISCOVERY
MOTION FOR COLLECTIVE CERTIFICATION AND COURT-AUTHORIZED
<u>NOTICE TO POTENTIAL OPT-IN PLAINTIFFS PURSUANT TO 29 U.S.C. § 216(b)</u>**

**CONSUMER ATTORNEYS, PLLC**

<u>*/s/ Emanuel Kataev, Esq.*</u>
Emanuel Kataev, Esq.
*Admitted  pro hac vice*
6829 Main Street
Flushing, NY, 11367
(718) 412-2421 (office)
(718) 489-4155 (facsimile)
ekataev@consumerattorneys.com

<u>*/s/ Moshe O. Boroosan*</u>
Moshe O. Boroosan, Esq.
NY Bar No. 5429915
68-29 Main Street
Flushing, NY 11367
Telephone: (718) 887-2926
Fax: (718) 715-1750
E: mboroosan@consumerattorneys.com

*Attorneys for Plaintiff
Darrin James Tiernan, on behalf of himself
and others similarly situated*

i

**TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................ 1

FACTS ........................................................................................................................... 2

    A. Parties and the Putative Collective ............................................................... 2

    B. All of Defendant's Employees Were Subjected to Similar Unlawful Policies and Practices and Were Trained to Work Despite Unpaid Wages and Overtime Compensation ............................................................................................................... 5

    C. Plaintiffs Satisfy All Other Necessary Requirements Under LR 23.2 ......................... 6

LEGAL STANDARD AND ARGUMENT ...................................................................... 7

    A.  The FLSA Authorizes Collective Actions and Notice to Similarly Situated Employees ............................................................................................................... 8

    B.  The Fifth Circuit Has Consistently Approved the Use of the Broad Discretion When Authorizing Notice to Employees .................................................................... 9

    C.  Other Drivers are "Similarly Situated" Employees ...................................... 11

    D.  Plaintiffs' Proposed Notice Should Be Approved ........................................ 13

    E.  Notice Should Be Sent by Mail, Email, and Text ......................................... 13

    F.  This Court Should Grant a Ninety (90) Day Opt-in Period for Additional Plaintiffs to Join this Litigation And for Reminder Notice to Be Issued to Those Who Have Not Yet Responded ................................................................................................... 14

CONCLUSION ............................................................................................................. 14

## TABLE OF AUTHORITIES

**Cases**

Alfarouqi v. Tri-Speed Inv., Inc.,
     2013 WL 5314436 (N.D. Tex., 2013) ......................................................... 11

Cervantez v. TDT Consulting, LLC,
     2019 WL 3948355 (N.D.Tex., 2019).......................................................... 14

Clark v. Centene Co. of Tex., L.P.,
     44 F. Supp. 3d 674 (W.D. Tex. 2014), aff'd, 656 Fed. Appx. 688 (5th Cir. 2016) ... 12, 13

Clarke v. Pei Wei Asian Dinner LLC,
     No. 3:20-CV-0800-N, 2023 WL 2518805 (N.D. Tex. Mar. 13, 2023)........................ 10

Constantine v. AAA Cooper Transportation,
     2026 WL 143149 (N.D.Tex., 2026) ............................................................. 10

Fisher v. Michigan Bell Telephone Co.,
     665 F. Supp. 2d 819 (E.D. Mich. 2009) ....................................................... 9

Harper v. FirstKey Homes, LLC,
     No. 3:25-CV-642-L-BW, 2026 WL 114926 (N.D. Tex. Jan. 15, 2026) .................... 10

Hoffman-La Roche v. Sperling,
     493 U.S. 165 (1989) ................................................... 2, 8, 9, 9 n.1, 13

Hoffman v. Sbarro, Inc.,
     982 F. Supp. 249 (S.D.N.Y. 1997) ) ................................................... 9 n.1

Jackson v. New York Tel. Co.,
     163 F.R.D. 429, 431 (S.D.N.Y. 1995) ......................................................... 9

Lusardi v. Xerox Corp.,
     118 F.R.D. 351 (D.N.J. 1987) ................................................................ 9-10

Meine v. TCHDallas2, LLC,
     2024 WL 3345836 (N.D.Tex., 2024) ) ....................................................... 14

Mooney v. Aramco Servs. Co,
     54 F.3d 1207 (5th Cir. 1995) ................................................................ 9 n.1

Orozco v. Anamia's Tex-Mex Inc,
     2016 WL 6311237 (N.D. Tex., 2016) ) ....................................................... 11

Sanchez v. 600 N. Akard LLC,
No. 3:23-CV-540-L-BN, 2023 WL 9472842 (N.D. Tex. Dec. 26, 2023), report and recommendation adopted as modified, No. 3:23-CV-540-L-BN, 2024 WL 382057 (N.D. Tex. Jan. 30, 2024) ................................................................. 10, 14

Segovia v. Fuelco Energy LLC,
2021 WL 2187956 (W.D. Tex., 2021) ................................................................ 10, 11

Snively v. Peak Pressure Control, LLC,
314 F. Supp. 3d 734 (W.D. Tex. 2018) ....................................................... 12

Stringer v. Big Texan Steak Ranch, Inc.,
No. 2:23-CV-181-Z-BR, 2025 WL 642050 (N.D. Tex. Feb. 27, 2025) ............... 10, 14

Swales v. KLLM Transp. Servs., L.L.C.,
985 F.3d 430 (5th Cir. 2021) ........................................................ 1, 8, 9, 10

Torres v. Chambers Protective Services, Inc., 2021 WL 3419705 (N.D. Tex., 2021) ..... 11, 12, 14

Vanzzini v. Action Meat Distributors, Inc.,
995 F.Supp.2d 703 (S.D. Tex., 2014) ................................................................ 11, 12

Vogt v. Tex. Instruments Inc.,
No. 3:05-cv-2244-L, 2006 WL 4660133 (N.D. Tex. Aug. 8, 2006) .......................... 10

**Statutes**

28 U.S.C. § 1331 ................................................................................................................ 7

29 U.S.C. § 201, *et seq.* ........................................................ 1, 2, 5, 6, 7, 8, 9 n.1, 10, 14

**Rules**

Federal Rule of Civil Procedure ("Rule") 23 .............................................................. 1, 8

Northern District of Texas Local Civil Rule 23.2 ("LR 23.2") .............................. 1, 6, 7

**INTRODUCTION**

Plaintiff Darrin James Tiernan (hereinafter "Plaintiff" or "Tiernan"), individually and on behalf of all others similarly situated (collectively hereinafter "Plaintiffs"), is challenging Defendant National Carriers, Inc.'s (hereinafter "Defendant") willful violations of the Fair Labor Standards Act ("FLSA"). More specifically, Plaintiffs allege that Defendant willfully violated the FLSA by knowingly suffering or permitting Plaintiffs to perform unpaid work and failing to pay these employees the federally mandated overtime compensation.

Tiernan respectfully submits that more employees would participate if they were made aware of the lawsuit.

Plaintiff submits this brief in compliance with this Court's Order dated October 15, 2025, requiring that "Plaintiffs shall file their Motion for Collective Class Action Certification by **March 27, 2026**. The motion must otherwise comply with Northern District of Texas Local Civil Rule 23.2 ["LR 23.2"] (except paragraph (f)), and must be accompanied by a supporting brief and all supporting evidence, including expert testimony, if any." See ECF Docket Entry 24 at ¶ 3(a). Plaintiff notes, respectfully, that LR 23.2 is in part inapplicable, given that Plaintiff has pled a collective action under 29 U.S.C § 216(b) and not a class action under Rule 23 of the Federal Rules of Civil Procedure (hereinafter referred to as "Rules" or "Rule"). Accordingly, the requirements of Rule 23 do not govern this motion. See Swales v. KLLM Transp. Servs., L.L.C., 985 F.3d 430, 436–37 (5th Cir. 2021). However, consistent with the Court's Order and Local Rule 23.2, Plaintiff provides a structured presentation of the proposed collective, the factual basis for certification, and the evidence supporting notice.

Congress and the Supreme Court explicitly authorized employees to pursue FLSA claims on a collective action basis through the opt-in procedure set forth in 29 U.S.C § 216(b). See

<u>Hoffman-La Roche v. Sperling</u>, 493 U.S. 165, 170 (1989) ("A collective action allows [. . .] plaintiffs the advantage of lower individual costs to vindicate rights by the pooling of resources. The judicial system benefits by efficient resolution in one proceeding of common issues of law and fact arising from the same alleged [. . .] activity"). Pursuant to 29 U.S.C. § 216(b), Plaintiff seeks conditional certification of his FLSA claim on behalf of the following employee collective:

> *All current and former employees who worked for Defendants at any time during the last three years* (the "FLSA Collective").

In accordance with these public policies, Plaintiffs hereby move for an Order:

(1) conditionally certifying the proposed FLSA Collective;

(2) requiring Defendant to identify all putative collective members by providing a list of their names, last known addresses, dates of employment, location(s) of employment, phone numbers, and email addresses in electronic and importable format within ten (10) days of the entry of the Order;

(3) permitting Court-authorized notice of this action (*see* **Exs. A-B**, Proposed Notice and Consent Forms and Text Message Notice) to be sent via U.S. Mail, e-mail, and text message;

(4) appointing the undersigned as counsel for the FLSA Collective; and

(5) giving members of the FLSA Collective ninety (90) days to join this case, measured from the date the Court-approved Notice is sent, with one reminder email sent thirty (30) days thereafter to anyone who did not respond.

For the reasons set forth below, Plaintiffs respectfully submit that this Court should grant the motion.

## FACTS

**A.    Parties and the Putative Collective**

**1.   Defendant**

2

Defendant is a business entity that provides transportation services in all 48 states in the continental United States. To facilitate its business operations, Defendant employs Drivers (like Plaintiff), who were paid less than the minimum wage and no overtime compensation, despite the expectation that they abide by an official, hourly work schedule. This is a violation of the FLSA.

Upon information and belief, Defendant has employed over two hundred (200) employees in this manner, within the past three (3) years across the United States.

2.    **Named Plaintiff, Opt-in Plaintiffs, and the Putative FLSA Collective**

Named Plaintiff Tiernan worked for Defendant as a Driver from on or about March 27, 2023 through on or about May 19, 2023.

As a Driver working for Defendant, Tiernan was expected to work a schedule of approximately seventy (70) hours per week, on Monday through Sunday from about 8:00 AM to around 6:00 PM.

On some occasions, Tiernan worked on deliveries that took two (2) days, meaning that he was required to work overnight, or otherwise late nights and early mornings outside of his typical schedule.

During Tiernan's tenure with Defendant, there were weeks in which Tiernan made less than $507.50 per week, which means he was paid less than the minimum wage of $7.25 per hour for all hours worked. During some weeks, he was paid as low as $300.00; he was not paid at all for the last week he worked for Defendant.

Moreover, Tiernan was not paid overtime compensation for hours worked above forty (40) hours per week. At all relevant times, Defendant failed to pay him the proper minimum wage and overtime compensation.

3

At any given time, upon information and belief, there were approximately over two hundred (200) other employees like Tiernan working under the same common plan and policy of Defendant which violates the FLSA. Tiernan has estimated that there are over two hundred (200) other employees who were similarly paid in accordance with Defendant's common plan and policy to violate the FLSA.

For example, Tiernan is aware of nine (9) drivers who worked with him for Defendant in the same position, at the same time and location, were paid in the exact same violative manner.

Accordingly, the same questions of law and fact are common to the Collective, most notably including:

a.  Whether the Defendant employed Plaintiff and the Collective Action Members within the meaning of the FLSA;

b.  Whether the Defendant failed to keep true and accurate wage and hour records for all hours worked by Plaintiff and the Collective Action Members;

c.  What proof of hours worked is sufficient where the employer fails in its duty to maintain wage and hour records;

d.  Whether the Defendant failed to pay Plaintiff and the Collective Action Members minimum wage for all hours worked in violation of the FLSA and the regulations promulgated thereunder;

e.  Whether the Defendant properly treated Plaintiff and the Collective Action Members as exempt from overtime compensation for all hours worked in excess of forty (40) hours per workweek;

f.  Whether the Defendant retaliated against Plaintiff and the Collective Action Members for complaining of inaccurate compensation by terminating their employment following the protected activity in violation of the FLSA and the regulations promulgated thereunder;

g.  Whether the Defendant is liable for all damages claimed hereunder, including but not limited to, compensatory, liquidated and statutory damages, interest, costs and disbursements, and attorney's fees.

**B.  All of Defendant's Employees Were Subjected to Similar Unlawful Policies and Practices and Were Trained to Work Despite Unpaid Wages and Overtime <u>Compensation</u>**

Defendant maintained a uniform compensation policy and practice under which all Drivers (and other employees) were paid less than the minimum wage and no overtime compensation, regardless of the number of hours they worked, and were otherwise required to adhere to fixed hourly schedules in excess of forty (40) hours per week. Under this common policy, Defendant did not pay their employees the appropriate hourly wages—neither for regular or overtime hours—in violation of the FLSA, 29 U.S.C. § 201, *et seq.*, such that Plaintiffs received less pay than the minimum wage despite working all week, and despite working over forty (40) hours per week.

Thus, Defendant failed to pay Tiernan and other employees at least the minimum wage (and overtime compensation) based upon a common plan and policy in violation of the FLSA.

Further, Defendant required all sales employees to report to work on a set schedule, maintain full-time hours, and remain available to perform their duties throughout their assigned shifts. These schedules routinely required employees to work in excess of forty (40) hours per week, yet Defendant did not pay them overtime premiums or any guaranteed minimum wages for those hours.  Thus, Defendant failed to pay Tiernan and others overtime in violation of the FLSA.

Because Defendant's employees were subject to a common pay policy and similar working conditions, Plaintiff and potential opt-in plaintiffs are "similarly situated" within the meaning of 29 U.S.C. § 216(b). The evidence shows a reasonable basis to conclude that Defendant's pay practices were uniform, unlawful, and applied collectively to all members of the proposed class.

Accordingly, Tiernan satisfies his low burden to establish that he is similarly situated to other employees of Defendant who were subject to the same common plan and policy which violates the FLSA.

**C.      Plaintiffs Satisfy All Other Necessary Requirements Under LR 23.2**

LR 23.2(a) ("the appropriate sections of Fed. R. Civ. P. 23 under which the suit is properly maintainable as a class action") has been set forth in section A *infra*.

LR 23.2(b) – seeking "specific factual allegations concerning the alleged class, including: (1) the approximate number of class members; (2) the definition of the class and any subclasses; (3) the distinguishing and common characteristics of class members, such as geography, time, and common financial incentives; (4) questions of law and fact that are common to the class; and (5) in actions asserting a class under Fed. R. Civ. P. 23(b)(3), allegations concerning the findings required by that section" – has been set forth in section C *infra*, and sections A and B *supra*.

Pursuant to LR 23.2(c), Plaintiff is an adequate representative of the proposed collective because he was subject to the same compensation practices as the other members of the collective and his claims arise from the same alleged unlawful policies. Plaintiff's interests are aligned with those of the collective, and he has retained experienced counsel to prosecute this action. Plaintiff understands his obligations and is prepared to participate in this litigation.

Pursuant to LR 23.2(d), this Court has subject matter jurisdiction over Plaintiff's claims pursuant to 29 U.S.C. § 216(b) and 28 U.S.C. § 1331. See ECF Docket Entry 1 ¶¶ 6-10. The FLSA does not require a jurisdictional amount in controversy.

Pursuant to LR 23.2(e), Plaintiff proposes that notice be distributed via U.S. Mail, email, and text message, as set forth below. The costs of notice will be advanced by Plaintiff's counsel, subject to potential recovery as part of any award of fees and costs.

Pursuant to the Court's Order, LR 23.2(f) need not be addressed. See ECF Docket Entry 24 at ¶ 3(a).

Pursuant to LR 23.2(g), Plaintiff's counsel is prosecuting this action on a contingency fee basis. Plaintiff will seek reasonable attorneys' fees and costs as permitted under 29 U.S.C. § 216(b), subject to Court approval.

## LEGAL STANDARD AND ARGUMENT

"Step one [of certifying a collective action] involves 'an initial 'notice stage' determination' that proposed members of a collective are similar enough to receive notice of the pending action. This initial step is referred to as 'conditional certification' of a putative class. District courts typically base their decisions at the first step 'on the pleadings and affidavits of the parties.' And they may require little more than 'substantial allegations that the putative [collective] members were together the victims of a single decision, policy, or plan.' Step two occurs at 'the conclusion of discovery (often prompted by a motion to decertify).' Because it has the benefit of full discovery, the court makes a second and final 'determination, utilizing a stricter standard,' about whether the named plaintiffs and opt-ins are 'similarly situated' and may therefore proceed to trial as a collective. If the court finds that the opt-ins are not sufficiently similar to the named plaintiffs, it 'must dismiss the opt-in employees, leaving only the named plaintiff's original claims.'

Factors considered at this second step include: '(1) [the] disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to [the] defendant which appear to be individual to each plaintiff; [and] (3) fairness and procedural considerations.'" See Swales v. KLLM Transp. Servs., L.L.C., 985 F.3d 430, 436–37 (5th Cir. 2021).

"The second approach, which only a few courts apply, comes from the 1990 Colorado district court opinion in *Shushan v. University of Colorado*. In *Shushan*, the court held that for conditional certification, plaintiffs 'must satisfy all of the requirements of [R]ule 23, insofar as those requirements are consistent with [ ] § 216(b).' The court acknowledged the difference between § 216(b)'s opt-in feature and Rule 23's opt-out feature, but it concluded 'that Congress intended [§ 216's] 'similarly situated' inquiry to be coextensive with Rule 23 class certification.' That means courts applying this test consider 'numerosity,' 'commonality,' 'typicality,' and 'adequacy of representation' to determine whether to certify a collective action." Id. at 437.

## A.  The FLSA Authorizes Collective Actions and Notice to Similarly Situated Employees

The FLSA requires employers to pay employees overtime compensation at one-and-a-half (1.5) times the regular rates at which they are employed for hours worked in excess of forty (40) hours in a week. See 29 U.S.C. § 207(a).

An employer who violates this requirement can be sued by the affected employees collectively.  See 29 U.S.C. § 216(b).

In order to participate in such a collective action, each aggrieved employee must file a written consent. Id.

The FLSA is silent on whether or how other similarly situated persons should be notified of the pendency of a collective action so that they might "opt in." In Hoffmann-La Roche, Inc. v. Sperling, the Supreme Court held that courts have discretion to implement the collective action

8

procedure by facilitating notice to potential class members.[1] See 493 U.S. 165, 172-74 (1989).

Commenting favorably upon collective actions, the Supreme Court noted:

> A collective action allows […] plaintiffs the advantage of lower individual costs to vindicate rights by the pooling of resources. The judicial system benefits by efficient resolution in one proceeding of common issues of law and fact arising from the same alleged […] activity. These benefits, however, depend on employees receiving accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate.

See Sperling, 493 U.S. at 170. Conversely, failure to provide prompt notice frustrates the FLSA's broad remedial purposes and its specific grant of collective action rights to employees. See Fisher v. Michigan Bell Telephone Co., 665 F. Supp. 2d 819, 828-29 (E.D. Mich. 2009); see also Jackson v. New York Tel. Co., 163 F.R.D. 429, 431 (S.D.N.Y. 1995).

### B. The Fifth Circuit Has Consistently Approved the Use of the Broad Discretion When Authorizing Notice to Employees

"Instead of adherence to Lusardi, or any test for 'conditional certification,' a district court should identify, at the outset of the case, what facts and legal considerations will be material to determining whether a group of 'employees' is 'similarly situated.' And then it should authorize preliminary discovery accordingly. The amount of discovery necessary to make that determination will vary case by case, but the initial determination must be made, and as early as possible. In other words, the district court, not the standards from Lusardi, should dictate the amount of discovery needed to determine if and when to send notice to potential opt-in plaintiffs." See Swales v. KLLM Transp. Servs., L.L.C., 985 F.3d 430, 441 (5th Cir. 2021) (citing Lusardi v. Xerox Corp., 118

---

[1] Although Hoffman-LaRoche is an Age Discrimination in Employment Act (ADEA) case, its analysis is applicable to FLSA cases because the ADEA incorporates the FLSA collective action provisions. See Mooney v. Aramco Servs. Co, 54 F.3d 1207, 1212 (5th Cir. 1995); Hoffman v. Sbarro, Inc., 982 F. Supp. 249, 261 n.15 (S.D.N.Y. 1997) ("[I]n Hoffman-LaRoche, the Supreme Court construed § 216(b) on its own terms, and its analysis applies with equal force to FLSA cases").

F.R.D. 351 (D.N.J. 1987)) (Swales cited in Harper v. FirstKey Homes, LLC, No. 3:25-CV-642-L-BW, 2026 WL 114926, at *2 (N.D. Tex. Jan. 15, 2026); Stringer v. Big Texan Steak Ranch, Inc., No. 2:23-CV-181-Z-BR, 2025 WL 642050, at *1-2 (N.D. Tex. Feb. 27, 2025); Sanchez v. 600 N. Akard LLC, No. 3:23-CV-540-L-BN, 2023 WL 9472842, at *1 (N.D. Tex. Dec. 26, 2023), report and recommendation adopted as modified, No. 3:23-CV-540-L-BN, 2024 WL 382057 (N.D. Tex. Jan. 30, 2024); Clarke v. Pei Wei Asian Dinner LLC, No. 3:20-CV-0800-N, 2023 WL 2518805, at *1-2 (N.D. Tex. Mar. 13, 2023); among others). "The bottom line is that the district court has broad, litigation-management discretion here." See Swales, 985 F.3d at 443.

Courts in this District regularly authorize notice early in the case where a plaintiff presents sufficient evidence of a common policy affecting similarly situated employees, even in advance of full discovery. See Segovia v. Fuelco Energy LLC, 2021 WL 2187956 at *6 (W.D. Tex., 2021), (citing Swales, 985 F.3d at 442). "This is so even 'before the court conditionally certifies a collective action or authorizes a notification pursuant to [29 U.S.C. §] 216(b)' because '[d]istrict courts, as part of their managerial responsibility, have 'a substantial interest in communications that are mailed for single actions involving multiple parties' and have discretion whether to implement the section 216(b) notice procedure to facilitate a court-authorized notice.'" See Constantine v. AAA Cooper Transportation, 2026 WL 143149, at *2 (N.D.Tex., 2026) (quoting Sperling, 493 U.S. at 169-170 and citing Vogt v. Tex. Instruments Inc., No. 3:05-cv-2244-L, 2006 WL 4660133, at *3 (N.D. Tex. Aug. 8, 2006)).

The FLSA statute of limitations continues to run on each individual's claim until that person files a written consent to join the action. See 29 U.S.C. § 256. As a result, delay in issuing notice may significantly prejudice potential opt-in plaintiffs by diminishing or extinguishing their claims. Courts therefore recognize the importance of timely notice where the record supports a

10

finding that similarly situated employees may exist. See, e.g., Orozco v. Anamia's Tex-Mex Inc, 2016 WL 6311237, at *1 (N.D. Tex., 2016) (in the context of equitable tolling); see also Alfarouqi v. Tri-Speed Inv., Inc., 2013 WL 5314436, at *4–5 (N.D. Tex., 2013).

### C. Other Drivers are "Similarly Situated" Employees

"When requesting notice to be sent to putative collective-action members, the plaintiff bears the burden of showing that the putative collective-action members are similarly situated. *Id.* at 443 n.65. To determine whether a plaintiff has met her burden of showing that the putative collective-action members are similarly situated, courts consider three factors: (1) the disparate factual and employment settings of the proposed plaintiffs; (2) the various defenses available to the defendant which appear to be individual to each proposed plaintiff; and (3) fairness and procedural considerations." See Torres v. Chambers Protective Services, Inc., 2021 WL 3419705, at *3 (N.D. Tex., 2021), citing Segovia v. Fuelco Energy L.L.C., No. SA-17-CV-1246-JKP, 2021 WL 2187956, at *7 (W.D. Tex. May 28, 2021) (cited in Vanzzini v. Action Meat Distributors, Inc., 995 F.Supp.2d 703, 720–21 (S.D. Tex., 2014).

"'From the statutory text, 'similarly situated,' as required for pursuit of an FLSA collective action, clearly differs from 'identically situated[ ]' '; thus, a plaintiff 'need not establish identical situations to carry [her] burden to show 'similarly situated.' ' […] Instead, courts must ask whether the plaintiff has 'demonstrated similarity among the individual situations,' which can be done by showing a factual nexus that binds the plaintiff and the putative collective-action members as alleged victims of a particular policy or practice. […] Differences between a plaintiff and the putative collective-action members 'will not preclude a collective action unless they are material to ultimate issues before the trial court.' […] Material distinctions 'make a difference relevant to the legal issues presented.' […] After considering all available evidence, the district court may

11

conclude that the plaintiff and the prospective opt-ins are similarly situated. […] In such a situation, the collective action will proceed." See Torres, 2021 WL 3419705, at *4 (internal citations omitted).

District courts within the Fifth Circuit have granted conditional certification based on facts similar to those offered here. See Torres, 2021 WL 3419705, at *5 ("the first factor—disparate factual and employment settings of the individual plaintiffs—indicates that those individuals are similarly situated. This factor "assesses the [potential] opt-in plaintiffs' job duties, geographic location, supervision, and salary to determine if the [potential opt-ins] are similarly situated." […] "The presence of a common policy, plan, or practice affecting all putative class members, although not required, can be helpful in assessing the first factor." […] Where there are legitimate differences between putative collective-action members, the first factor does not weigh against a similarly situated finding unless FLSA liability turns on the identified differences. […] Thus, where a plaintiff's claims are based on an employer's allegedly unlawful policy, noted differences between putative collective-action members that do not relate to the policy will not provide a basis for a court to find that the first factor weighs against a similarly situated finding") (citing Snively v. Peak Pressure Control, LLC, 314 F. Supp. 3d 734, 739 (W.D. Tex. 2018)), Vanzzini, 995 F. Supp. 2d at 721, Clark v. Centene Co. of Tex., L.P., 44 F. Supp. 3d 674, 688 (W.D. Tex. 2014), aff'd, 656 Fed. Appx. 688 (5th Cir. 2016) ("These are legitimate differences, but [the employer] does not explain why they are material and preclude collective resolution of this case. […] FLSA liability does not turn on the geographic location of a workplace or on the identity of a direct supervisor."), Allen v. City of Chicago, No. 10 C 3183, 2014 WL 5461856, at *6–7 (N.D. Ill. Oct. 22, 2014).

12

Here, other Drivers are similarly situated to Tiernan. They each were subject to the same orientation, performed similar job duties of driving and executing deliveries, worked schedules of approximately seventy (70) hours per week, and were at times required to work overnight, or otherwise late nights and early mornings outside of their typical schedules.

Further, at this stage, it is not necessary to discern factual details regarding other Drivers' work for Defendant, because such differences do not defeat similarity so long as there is a common policy. Id. Moreover, it is irrelevant that many prospective opt-in Plaintiffs have worked for Defendant at different locations and under different supervisors. See Clark v. Centene Co. of Tex., L.P., 44 F. Supp. 3d at 688.

Accordingly, other Drivers of Defendant are similarly situated to Tiernan.

**D.  Plaintiffs' Proposed Notice Should Be Approved**

Courts have discretion to facilitate notice to potential opt-in plaintiffs and to ensure that such notice "is timely, accurate, and informative." See Sperling, 493 U.S. at 172. Accordingly, courts review and approve proposed notice to ensure that it provides neutral and informative guidance to potential plaintiffs. Id. at 169.

That being said, Plaintiffs' proposed Notice has been carefully drafted to ensure that it is fair, accurate, and neutral, and that it provides potential opt-in plaintiffs with sufficient information to make an informed decision regarding participation in this action.

Hence, this Court should approve Plaintiffs' proposed Notice and permit Plaintiffs' counsel to circulate the Notice by U.S. Mail, email, and text message.

**E.  Notice Should Be Sent by Mail, Email, and Text**

Recognizing the reality of modern communication and its potential to advance the remedial goals of the FLSA, numerous courts, including those in this Circuit, have found it appropriate to

distribute notice by way of e-mail and text message, in addition to mail. See, e.g., Sanchez v. 600 North Akard LLC, 2023 WL 9472842, at *3 (N.D.Tex., 2023); Meine v. TCHDallas2, LLC, 2024 WL 3345836, at *5 (N.D.Tex., 2024); Stringer v. Big Texan Steak Ranch, Inc., 2025 WL 642050, at *5 (N.D.Tex., 2025); Cervantez v. TDT Consulting, LLC, 2019 WL 3948355, at *10 (N.D.Tex., 2019); Torres v. Chambers Protective Services, Inc., 2021 WL 3419705, at *12 (N.D.Tex., 2021).

Accordingly, the Notice should be sent via first class mail, e-mail, and text message.

### F. This Court Should Grant a Ninety (90) Day Opt-in Period for Additional Plaintiffs to Join this Litigation And for Reminder Notice to Be Issued to Those Who Have Not Yet Responded

Plaintiffs respectfully request that the Court approve a ninety (90) day opt-in period and allow Plaintiffs to issue one reminder email thirty (30) days into the notice period to those who have not yet responded to the initial opt-in notice.

Courts have commonly and routinely approved such reminders, especially post-pandemic. See, e.g., Stringer v. Big Texan Steak Ranch, Inc., 2025 WL 642050, at *6 (N.D. Tex., 2025) ("Although a notice period of 60 days is often the default, courts commonly approve notice periods of 90 days within the context of FLSA collective actions") (internal citations omitted). Moreover, a thirty (30) day reminder "is reasonable." ("This Court does not find that a 30-day reminder would be overly burdensome or communicate an appearance of judicial impropriety, as courts have often approved follow-up communications") (internal citations omitted). Id.

### CONCLUSION

For the reasons explained above, Plaintiffs respectfully request that the Court, pursuant to Section 16(b) of the FLSA, 29 U.S.C. § 216(b), enter an Order:

(1) Conditionally certifying the proposed FLSA Collective;

(2) requiring Defendant to identify all putative collective members by providing a list of their names, last known addresses, dates and location of employment, phone numbers, and email addresses in electronic and importable format within ten (10) days of the entry of the order;

(3) Authorizing Plaintiffs' proposed form of notice (**Exhibits A & B**) and implementing a procedure whereby the notice of Plaintiffs' FLSA claims is sent (via U.S. Mail, email, and text message) to:

> *All current and former employees who worked for Defendant at any time during the last three years* (the "FLSA Collective").

(4) Appointing the undersigned counsel as counsel for the FLSA Collective; and

(5) Giving members of the FLSA Collective ninety (90) days to join this case, measured from the date the Court-approved Notice is sent, with one reminder email sent thirty (30) days thereafter to anyone who did not respond.

Dated:      Flushing, New York
            March 27, 2026                     Respectfully submitted,

                                               **CONSUMER ATTORNEYS, PLLC**

                                               */s/ Emanuel Kataev, Esq.*
                                               Emanuel Kataev, Esq.
                                               *Admitted  pro hac vice*
                                               6829 Main Street
                                               Flushing, NY, 11367
                                               (718) 412-2421 (office)
                                               (718) 489-4155 (facsimile)
                                               ekataev@consumerattorneys.com

                                               */s/ Moshe O. Boroosan*
                                               Moshe O. Boroosan, Esq.
                                               NY Bar No. 5429915
                                               68-29 Main Street
                                               Flushing, NY 11367
                                               Telephone: (718) 887-2926

15

Fax: (718) 715-1750
E: mboroosan@consumerattorneys.com

*Attorneys for Plaintiff*
*Darrin James Tiernan, on behalf of himself*
*and others similarly situated*

**VIA ECF**
All counsel of record

16