**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| DARRIN JAMES TIERNAN, on behalf of himself and others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>NATIONAL CARRIERS, INC.,<br><br>Defendant. | Case No.: 3:25-cv-01249-L (SAL) (RAR)<br><br>**DECLARATION OF DARRIN JAMES TIERNAN** |

Darrin James Tiernan declares, pursuant to 28 U.S.C. § 1746, under penalty of perjury, that the following is true and correct:

1. I am the Plaintiff in the above-referenced case.

2. As such, I am familiar with all the facts and circumstances outlined herein based upon my personal knowledge and a review of Defendant's records submitted in connection with its motion for summary judgment.

3. I respectfully submit this declaration in opposition to motion. Defendan

4. While payroll records corroborate I was paid $250.00 orientation pay and the $100.00-per-day training structure, I dispute that the compensation I actually received for each workweek, divided by all compensable hours, always equaled or exceeded $7.25 per hour.

5. Moreover, while payroll records support orientation pay of $250.00 and training pay of $100.00 per day (e.g. $400.00 for four training days), I dispute that the compensation I actually received for each workweek, divided by all compensable hours, always equaled or exceeded at least $7.25 per hour.

6. For my first week of training, I made it to the classroom at approximately 8:00 AM and remained there until 3:00 PM, and had this schedule for three (3) days straight.

7. For the other two days, when I drove the truck with the trainer, I started around 7:00 AM and ended at 5:00 PM.

8. As a result, I worked approximately forty-one (41) hours that first week in training such that I was required to be paid overtime at a rate of one-and-a-half times my regular rate, which was $15.85[1] per hour.

9. Defendant did not require me to clock in or out during the training period.

10. Critically, as far as I can recall, I did not leave the State of Texas during the week I was training and for another week of my employment after training.

11. Although Defendant used a per-mile compensation method for solo trips and my solo rate was $0.40 per mile according to my records, I dispute that the resulting compensation, divided by all compensable hours in each individual workweek, always equaled or exceeded $7.25 per hour.

12. A review of my compensation details establishes this.

| Week No. | Total Hours | Total Earned | Total Paid | Regular Pay | Overtime Pay | Differential |
|---|---|---|---|---|---|---|
| 1 | 41 | $657.94 | $650.01 | $290.00 | $360.01 | $7.93 |
| 2 | 70 | $616.40 | $700.03 | $290.00 | $410.03 | $0.00 |
| 3 | 70 | $616.40 | $700.03 | $290.00 | $410.03 | $0.00 |
| 4 | 70 | $616.40 | $523.20 | $290.00 | $233.20 | $93.20 |
| 5 | 70 | $616.40 | $415.60 | $290.00 | $125.60 | $200.80 |
| 6 | 70 | $616.40 | $574.80 | $290.00 | $284.80 | $41.60 |
| 7 | 70 | $616.40 | $468.00 | $290.00 | $178.00 | $148.40 |
| 8 | 70 | $616.40 | $546.00 | $290.00 | $326.40 | $70.40 |

13. I was not authorized to drive any specific routes, and was trusted to use my own GPS to establish my own routes, nor is there any evidence that I drove an unauthorized route or diverted at any point in time.

14. I was never told that I would earn a rate of $0.36, $0.38, or $0.40 per mile.

[1] $650.01 divided by forty-one (41) hours equals $15.85, multiplied by one-and-a-half is $23.78, minus $15.85 to calculate the overtime differential is $7.93 per overtime hour.

15. I recognize that some NCI drivers earn higher per-mile rates than the foregoing rates.

16. I dispute whether the amount of money I actually earned in each workweek, divided by all compensable hours, satisfies the federal minimum wage; as set forth in the table above, it does not.

17. Because Defendant admits that it does not know the number of hours I actually worked, there is an issue of fact as to whether I was properly paid for all hours that I worked.

18. Further, Defendant details a whole host of other payments issued to drivers like me according to its policies, which I address in turn.

19. I dispute receiving all accessorial pay to which I was entitled.

20. I was not paid “stop pay,” and I am a

compensation either.

21. I never earned “detention pay.”

22. I dispute any categorical assertion tha

is automatically non-compensable without proof that I was completely relieved of duty; further, I never earned “layover pay.”

23. Generally speaking, I was working at all relevant times when I was with the truck and was not free to use my time as I saw fit as I had a duty to monitor the truck and its contents.

24. I was not off duty during the times that NCI regards as non-compensable time, including while I was not hauling a loaded trailer.

25. Nor was I off duty when I was waiting, conducting a pre- and post-trip inspection, fueling, filling out paperwork, loading and unloading, deadheading, repositioning equipment, maintenance-related activity, and communicating with dispatch.

26. I was never off duty during non-compensable time outside loaded hauls.

27. I dispute that I was completely relieved of duty at any particular interval such that it was non-compensable, as I was waiting, engaged in property-care, inspection, communication, or other compensable activity, nor has NCI shown any evidence that I was completely relieved of duty such that I was not entitled to be paid for all my time spent working for Defendant.

28. While NCI compensated me with breakdown pay for April 29–May 1, 2023 according to its records, I dispute its workweek allocation of –that Sunday workweek, April 29 and 30 fall in Week 5 and May 1 falls in Week 6, so only $100.00 (not $150.00) is properly attributable to Week 5.

29. I delivered food products, not hazardous materials.

30. I dispute that every deduction from my pay was a *bona fide* personal advance rather than an unreimbursed business expense, and I was never taught or instructed about this during training.

31. Despite submitting reporting envelopes, I was not reimbursed for my expenses.

32. I did use ComChek/ComCard for some transactions, but NCI has not established that every deducted amount was a *bona fide* personal advance rather than a business expense.

33. My dispatcher was not in contact with me on the day I decided to quit, and the dispatcher previously claimed I accepted a load that I had not.

34. I did not engage in interstate commerce during my fifth workweek, April 24th through April 30th, as I did not leave the State of Texas.

35. NCI attributes $546.00 in compensation to the May 13–17 trip completed in Week 8, but I dispute the calculation and allocation.

36. NCI states “$546 ($0.40 per mile00; for with $20 stop pay such that the total is $546.00.

37. If Defendant counts $546.00 as mileage and then adds another $20.00 stop pay, compensation is overstated by $20.00.

38. More importantly, NCI assigns the entire May 13–17 trip to Week 8 even though May 13 and 14 fell in Week 7 (Monday May 8–Sunday May 14).

39. I am advised that whether I was properly paid is measured workweek-by-workweek; mileage earnings and compensable hours from May 13–14 must be allocated to Week 7, not shifted solely because payroll waits until trip completion.

40. During my last trip before I separated from employment with NCI, I was never dispatched to pick up another load; I never abandoned a load.

41. I did tell Defendant that I quit while in Georgia and was *en route* to return the truck.

42. Defendant never accepted my resignation, and instead terminated me in retaliation for my complaints.

43. The incident that occurred with my truck on April 28, 2023 was never reported at the time of the incident because Defendant made the determination that it was a non-reportable incident.

44. However, after I complained about my wages, Defendant reported the incident on May 20, 2023, almost an entire month later, and *only one (1) day* after I made my complaint about wages.

45. The Defendant did this in retaliation for my complaint about wages to hurt my driving record and prevent me from getting another job in the trucking industry.

46. I dispute the characterization and compl

47. I deny that NCI has established I owe $804.81 in unreimbursed personal advances; I stopped taking advances and did not take such large amounts during my employment.

I declare under penalty of perjury that the foregoing is true and correct. Executed on July 27, 2026.

Darrin James Tiernan