**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| DARRIN JAMES TIERNAN, on behalf of himself and others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>NATIONAL CARRIERS, INC.,<br><br>Defendant. | Case No.: 3:25-cv-1249-L |

**<u>DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT</u>**

**TABLE OF CONTENTS**


TABLE OF AUTHORITIES

I. PLAINTIFF'S OPPOSITION FAILS TO COMPLY WITH THIS COURT'S LOCAL RULES....2

II. THE MCA EXEMPTION APPLIES BECAUSE PLAINTIFF WAS SUBJECT TO INTERSTATE DISPATCH AT ALL TIMES DURING HIS EMPLOYMENT....3

A. Plaintiff Drove an Interstate Trip from Texas to Florida During His First Week of Work....4

B. Plaintiff's Fourth Week of Work Included an Interstate Trip in Addition to an Intrastate Trip....5

C. Plaintiff's Fifth Week of Work Included Interstate Trips and the Transport of Interstate Goods Within Texas....5

D. Even if Plaintiff Were Able to Prove Purely Intrastate Work During Some Limited Number of Weeks—and to Be Clear, He Cannot—Plaintiff 7Would Still Be Exempt....7

III. NCI CORRECTLY ALLOCATED EARNINGS AND ESTABLISHED MINIMUM-WAGE COMPLIANCE ON A WORKWEEK BASIS....8

A. Plaintiff's Week 7 Challenge Misreads 29 C.F.R. §§ 778.103 and 778.111....8

B. Plaintiff's Recalculation of His Compensation for Week 5 Is Not Material Because There Is No Dispute that Plaintiff Worked—at Most—Fewer than Forty Hours in That Week....10

C. Plaintiff's Hours Estimate Does Not Create a Genuine Dispute....10

D. Plaintiff Fails to Identify Any Compensable Time that Went Unpaid and Resulted in a Minimum Wage Violation....12

E. The Alleged Deficiency in the Week 8 Arithmetic Does Not Create a Genuine Dispute....12

IV. PLAINTIFF'S RETALIATION CLAIM FAILS BECAUSE PLAINTIFF ADMITTED HE VOLUNTARILY QUIT AND NO ADVERSE ACTION FOLLOWED HIS ALLEGEDLY PROTECTED COMPLAINT....14

A. Plaintiff's Own Sworn Testimony Establishes He Voluntarily Quit....14

B. Defendant's Post-Separation Accident Report Was Lawful and Not Retaliatory....15

C. Plaintiff Cannot Satisfy the Prima Facie Causation Element or Show Pretext. ..... 17

V. CONCLUSION ..... 17

## TABLE OF AUTHORITIES

**Cases**


*Allen v. Coil Tubing Servs., L.L.C.*, 755 F.3d 279 (5th Cir. 2014) .............................................3, 7

*Allen v. Coil Tubing Servs., L.L.C.*, 846 F. Supp. 2d 678 (S.D. Tex. 2012).................................10

*Amaya v. NOYPI Movers, L.L.C.*, 741 F. App'x 203 (5th Cir. 2018) ..........................................3,7

*Anderson v. Mt. Clemens Pottery Co*., 328 U.S. 680 (1946).................................................. 10-11

*Dauphin v. Chestnut Ridge Transp., Inc.,* 544 F. Supp. 2d 266 (S.D.N.Y. 2008)..........................7

*Encino Motorcars, LLC v. Navarro*, 584 U.S. 79 (2018) ..............................................................3

*Escobedo v. Ace Gathering, Inc.*, 109 F.4th 831 (5th Cir. 2024) ....................................................6

*Graham v. Dallas Indep. Sch. Dist.*, 2006 WL 2468715 (N.D. Tex. Aug. 24, 2006) .....................3

*Gray Cas. & Sur. Co. v. 3i Contracting, LLC*, No. 3:23-CV-2511-L, 2024 WL 1121800 (N.D. Tex. Mar. 13, 2024) ..........................................................................................3

*Hagan v. Echostar Satellite, L.L.C.*, 529 F.3d 617 (5th Cir. 2008)...............................................14

*Kelley v. Alpine Site Servs.*, Inc., 110 F.4th 812 (5th Cir. 2024) ....................................................7

*Kibodeaux v. A&D Ints., Inc.*, No. 3:20-CV-00008, 2022 WL 980354 (S.D. Tex. Mar. 31, 2022)......................................................................12

*Kwong v. Am. Flood Rsch., Inc.*, 132 F. App'x 18 (5th Cir. 2005)................................................17

*Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) ..............................................12, 15

M*erchants Fast Motor Lines, Inc. v. ICC*, 528 F.2d 1042 (5th Cir. 1976)......................................6

*Osborn v. JAB Mgmt. Servs., Inc.*, 126 F.4th 1250 (7th Cir. 2025) ....................................... 11-12

*Pierce v. Amerifield, Inc.*, No. 3:21-CV-00739-BT, 2023 WL 8880354 (N.D. Tex. Dec. 21, 2023) ....................................................................3

*S.W.S. Erectors, Inc. v. Infax, Inc.*, 72 F.3d 489 (5th Cir. 1996) .....................................................5

*Songer v. Dillon Res., Inc.*, 618 F.3d 467 (5th Cir. 2010) .............................................................7

*Starnes v. Wallace*, 849 F.3d 627 (5th Cir. 2017)..........................................................................17

*Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338 (2013) ....................................................16

*Valdez v. Wells Fargo Advisors, LLC*, No. 23 CV 7279 (VB), 2026 WL 821431 (S.D.N.Y. Mar. 25, 2026)..........................................................................................................15

*Viet v. Le*, 951 F.3d 818 (6th Cir. 2020) ........................................................................11

**<u>Regulations and Local Rules</u>**

29 C.F.R. § 778.103 ..........................................................................................................8

29 C.F.R. § 778.106. ..........................................................................................................9

29 C.F.R. § 778.111 ..........................................................................................................8

L.R. 56.4(a) ......................................................................................................................2

L. R. 56.5(a) ......................................................................................................................2

L.R. 56.6(a)-(b) ..................................................................................................................2

L.R. 56.5(c) ......................................................................................................................2

Plaintiff Darrin Tiernan's opposition confirms, rather than defeats, summary judgment. Plaintiff concedes the majority of the material facts in Defendant's Statement of Uncontroverted Facts. Plaintiff typically "denies" a fact, not disputing its accuracy but only the legal conclusion as to whether it proves minimum-wage-compliance. Plaintiff makes three principal arguments: (1) the Motor Carrier Act ("MCA") exemption is inapplicable to weeks in which Plaintiff drove only within Texas; (2) Defendant misallocated earnings and hours across workweeks; and (3) that genuine factual disputes exist on the retaliation claim. Each fails on the record.

First, the MCA exemption applies where an employee could reasonably have been expected to engage in interstate commerce consistent with his job duties. Plaintiff's own admissions that his job covered forty-eight states, that he drove interstate routes during multiple workweeks, and that he understood he could be dispatched interstate at any time satisfy the standard as a matter of law. Sporadic intrastate work within a broader interstate role does not defeat the exemption, especially when—as here—the intrastate driving is part of interstate commerce.

Second, Plaintiff's workweek allocations challenges rest on a misreading of the applicable pay regulations. Under the relevant regulations, piece-rate pay (including mileage pay) is earned over the hours spent completing it, regardless of when it is paid. Defendant's payroll practice, which pays multi-day trip earnings in the pay period in which the trip ends, is consistent with the controlling regulation. Plaintiff's proposed reallocation of mileage earnings and breakdown pay rests on a flawed legal premise and tries to separate the hours spent earning the compensation from the compensation.

Third, Plaintiff's retaliation claim fails because he expressly admitted – unequivocally and under oath – that he quit before he ever raised a pay concern. Defendant's internal characterization of the separation as a "termination" following job abandonment does not create a genuine dispute;

it reflects the administrative consequences of Plaintiff's voluntary walkout. And even if Plaintiff's termination was viewed as involuntary by Defendant because it is undisputed that no adverse action preceded Plaintiff's protected complaint, and the post-separation accident report was lawful and consistent with Defendant's standard practice. Summary judgment should be granted.

## I. PLAINTIFF'S OPPOSITION FAILS TO COMPLY WITH THIS COURT'S LOCAL RULES.

As a threshold matter, Plaintiff's opposition fails to comply with numerous Local Rules. In opposition to NCI's motion for summary judgment, Plaintiff filed three documents: a Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment (Dkt. No. 45), a Declaration of Darrin James Tiernan (Dkt. No. 46), and the entire transcript from the deposition of Plaintiff (Dkt. No. 47).

Local Rule 56.4 requires a response to a motion for summary judgment that is separate from the opposing party's brief. L.R. 56.4(a); L. R. 56.5(a) ("Notwithstanding LR 5.1(c), the brief must be filed as a separate document from the motion or response that it supports."). Plaintiff did not file a separate response.

Local Rule 56.6 requires an opposing party to submit any evidence offered in opposition in the form of a self-contained appendix that is numbered sequentially in the bottom right corner of each page. L.R. 56.6(a)-(b). Instead of an appendix, Plaintiff filed two separate documents (a declaration and a deposition) that are separately paginated with the page numbers in varying places. *See* Dkt. Nos. 46-47.

Local Rule 56.5(c) requires a party opposing a motion for summary judgment to support each assertion of fact "by citing each relevant page of its own or the opposing party's appendix." L.R. 56.5(c). Plaintiff's does not cite to his or NCI's appendix.

"The local rules of this Court 'are not idle requirements,' and [Plaintiff's] disregard for those rules could warrant denial of a motion, the striking of a response from the record, or dismissal." *Pierce v. Amerifield, Inc.*, No. 3:21-CV-00739-BT, 2023 WL 8880354, at *3 n.2 (N.D. Tex. Dec. 21, 2023 (quoting *Graham v. Dallas Indep. Sch. Dist.*, 2006 WL 2468715, at *1–2 (N.D. Tex. Aug. 24, 2006); *see also Gray Cas. & Sur. Co. v. 3i Contracting, LLC*, No. 3:23-CV-2511-L, 2024 WL 1121800, at *15 (N.D. Tex. Mar. 13, 2024) ("Compliance with Local Rules facilitates the expeditious resolution of pending motions, and a party's failure to follow these rules interferes with and hinders the court's ability to effectively manage its docket. It is not incumbent on the court to use its already scarce judicial resources to wade through noncompliant materials hastily filed by a party.").

Thus, Plaintiff's failure to comply with the local rules is—on its own—a basis for granting NCI's motion and dismissing Plaintiff's claims. As discussed below, even if this Court were to overlook the deficiencies and consider the merits of Plaintiff's opposition, summary judgment is still appropriate.

## II. THE MCA EXEMPTION APPLIES BECAUSE PLAINTIFF WAS SUBJECT TO INTERSTATE DISPATCH AT ALL TIMES DURING HIS EMPLOYMENT.

Plaintiff erroneously argues for a narrow construction of the MCA exemption. *See* Plaintiff. Br. at 33 (citing *Allen v. Coil Tubing Servs., LLC*, 755 F.3d 279, 283 (5th Cir. 2014). That approach was rejected by the Supreme Court over eight years ago in favor of giving the FLSA's exemptions "a fair reading." *Encino Motorcars, LLC v. Navarro*, 584 U.S. 79, 89 (2018); *see also Amaya v. NOYPI Movers, LLC*, 741 F. App'x 203, 204-05 & n.2 (5th Cir. 2018) (noting that *Encino Motorcars* rejected *Allen*'s statement of the rule). Here, a fair reading of the exemptions shows that NCI has met its burden and Plaintiff was exempt from overtime.

Plaintiff concedes: (1) NCI services all 48 continental states; (2) all NCI drivers are expected to be available to drive interstate trips at any time; (3) Plaintiff understood he could drive "in all 48 states"; (4) Plaintiff drove interstate routes during his training and several of his solo workweeks; and (5) Plaintiff's job did not confine him to Texas. *See* Plaintiff Br 7, 15, 23(admitting); Tiernan Dep. 73:17-20 (Dkt. No. 47, at 73). These admissions are dispositive.

Despite these admissions, Plaintiff argues the MCA exemption should not apply to his "week or more in training exclusively within the State of Texas." Plaintiff's argument is both factually and legally incorrect.

### A. Plaintiff Drove an Interstate Trip from Texas to Florida During His First Week of Work.

First, relying on a vague declaration, Plaintiff claims he was in Texas for his first week of employment. But Plaintiff admitted in his deposition that his first week of work (from March 27 to April 2, 2023) included three days of orientation in Texas followed by a training trip in which he drove with a trainer from Texas to Florida:

> Q. So -- so you remember this trip with -- with your trainer from Kansas to Florida?
>
> A. From Kansas, because we had the -- what we picked up out of Dodge City was beef.
>
> Q. And then you drove that beef from Dodge City, Kansas to Auburndale, Florida?
>
> A. Correct.

Plaintiff Dep. 117:7-13 (Dkt. No. 47, at 117); *id.* 175:8:16 (Dkt. No. 47, at 175) (confirming that his first week of pay included his training trip from to Florida); *see also* BC Dec. ¶ 29, App. 254; Exhibit D, App. 66; Exhibit E, App. 80-85.

In his declaration, Plaintiff's now states that "as far as [he] can recall, [he] did not leave the State of Texas during the week [he] was training." Plaintiff Dec. ¶ 10 (Dkt. No. 46, at 2). But

that self-serving declaration directly contradicts his previous sworn testimony and is not sufficient to create a dispute of fact that his first week included driving interstate. "It is well settled that this court does not allow a party to defeat a motion for summary judgment using an affidavit that impeaches, without explanation, sworn testimony." *S.W.S. Erectors, Inc. v. Infax, Inc.*, 72 F.3d 489, 495 (5th Cir. 1996).

### B. Plaintiff's Fourth Week of Work Included an Interstate Trip in Addition to an Intrastate Trip.

In arguing that some of his workweeks did not include interstate travel, Plaintiff appears to have mistaken the first week of his employment (which included a trip to Florida) with the first trips of his solo driving career, which were within the State of Texas. The first of his intra-Texas trips was in the fourth week of his employment, and Plaintiff admits that his fourth week also included a trip with his trainer from Illinois to Texas. *See* Plaintiff Br. at 25. Thus, that week undisputedly included interstate travel.

### C. Plaintiff's Fifth Week of Work Included Interstate Trips and the Transport of Interstate Goods Within Texas.

Plaintiff's fifth week of work began in Louisiana. He was then directed to travel to Texas by dispatch, completed two trips in Texas, and was dispatched from Texas to pick up a load in Kansas. Plaintiff's intra-Texas route on April 26, 2023, involved driving a load of energy drinks from Conroe, Texas to Irving, Texas, where he dropped off the loaded trailer for another NCI driver to pick it up and complete the delivery from Irving, Texas to Wichita, Kansas. Another of his intra-state routes involved picking up a trailer loaded with frozen meat that had been driven to Irving, Texas from Mississippi by another NCI driver and then delivering the frozen meat to Lubbock, Texas. *See* BC Dec. ¶¶ 36-37, App. 255; Exhibit D, App. 70-71.; Exhibits N-O, App.

171-91. Plaintiff admits these facts.[1] *See* Plaintiff Br. 22-23; Plaintiff Dec. ¶ 34 (Dkt. No. 46, at 4) (offering an incomplete and inadmissible legal conclusion that "[he] did not engage in interstate commerce during my fifth workweek, April 24th through April 30th, as [he] did not leave the State of Texas.").

Putting aside the fact that Plaintiff's travel during his fifth workweek crossed state lines at the beginning and end,[2] Plaintiff's travel in his fifth workweek satisfies the MCA exemption because his intrastate driving was part of the goods' interstate journey. The Fifth Circuit has "long recognized the 'elemental' principle that 'a carrier is engaged in interstate commerce when transporting goods . . . ultimately bound for destinations beyond Texas, even though the route of the particular carrier is wholly within one state.'" *Escobedo v. Ace Gathering, Inc.*, 109 F.4th 831, 835 (5th Cir. 2024) (emphasis omitted) (quoting *Merchants Fast Motor Lines, Inc. v. ICC*, 528 F.2d 1042, 1044 (5th Cir. 1976)). That Court has held that as long as "goods carried are in the course of through transit" to another state, "[t]raffic need not physically cross state lines to be in interstate commerce." *Merchants Fast Motor Lines, Inc.*, 528 F.2d at 1044.

---

[1] Despite admitting that the goods he transported either originated outside Texas or were headed outside of Texas, Plaintiff argues later in his brief that NCI failed to meet its burden in showing the goods. This unsupported statement, which contradicts his own admission, is also belied by NCI's declaration and documentary evidence that shows the loads he carried were involved in interstate travel. *See* BC Dec. ¶¶ 36-37, App. 255; Exhibit D, App. 70-71.; Exhibits N-O, App. 171-91.

[2] Under DOL guidance, Plaintiff's transport of his tractor (even without a load) across state lines was part of interstate commerce. *See* Dep't of Labor Field Operations Handbook § 24b02 ("The movement of trucks, tractors, or trailers (either empty or loaded) over the public highways between loading platforms, the garage, storage facilities or terminals, where such movement is either the beginning or continuation of an interstate or foreign journey, is itself transportation in interstate or foreign commerce subject to the jurisdiction of the DOT.").

### D. Even if Plaintiff Were Able to Prove Purely Intrastate Work During Some Limited Number of Weeks—and to Be Clear, He Cannot—Plaintiff Would Still Be Exempt.

Even **if Plaintiff were able to show that he had some weeks with purely intrastate trips**, courts do not analyze the exemption's application on a week-by-week or employee-by-employee basis. *Kelley v. Alpine Site Servs.*, Inc., 110 F.4th 812, 816 (5th Cir. 2024); *Songer v. Dillon Res., Inc.*, 618 F.3d 467, 475 (5th Cir. 2010). Instead, the exemption applies to all workweeks a driver was engaged in interstate commerce or could reasonably be expected to be asked to engage in interstate commerce. *Kelley*, 110 F.4th at 816. In making this inquiry, the court considers "the employees as a class." *Allen*, 755 F.3d 279, 287. This means that if the defendant's drivers engaged in interstate commerce or had a reasonable expectation of being asked to, the court applies the exemption, "even if [it exempts] employees who rarely, or never, engage in interstate commerce." *Id.*; *Kelley*, 110 F.4th at 816; s*ee also Amaya v. NOYPI Movers, L.L.C.*, 741 F. App'x 203, 206 (5th Cir. 2018) (collecting cases applying the MCA exemption where as little as 2.75% of the class of employees' work involved interstate transport).

Plaintiff readily admits that he and NCI's other drivers could be assigned to drive interstate at any time, with dispatchers assigning loads that could take them anywhere in the lower 48 states. Plaintiff Br. at 23. So even if there were weeks in which Plaintiff did not leave Texas, it does not affect his exemption.

Plaintiff's own case law illustrates the point. In *Dauphin v. Chestnut Ridge Transp., Inc.,* 544 F. Supp. 2d 266 (S.D.N.Y. 2008), the court denied summary judgment because the defendants had not established whether interstate travel was part of the plaintiff's job duties during the *entire* relevant period. Here, in contrast, Defendant has affirmatively established—and Plaintiff has admitted—that interstate driving was a core, expected feature of his job throughout his employment. *Dauphin* therefore supports Defendant's position.

The MCA exemption plainly applies. Summary judgment should be granted on Plaintiff's overtime claim.

## III. NCI CORRECTLY ALLOCATED EARNINGS AND ESTABLISHED MINIMUM-WAGE COMPLIANCE ON A WORKWEEK BASIS.

Without any competent evidence of his hours worked, Plaintiff tries a scattershot approach to saving his minimum wage claim. But none of his arguments hit the mark and summary judgment is needed.

### A. Plaintiff's Week 7 Challenge Misreads 29 C.F.R. §§ 778.103 and 778.111.

Plaintiff argues that Defendant was required to divide the pay he received in Week 7 (and not all pay he earned for his work in week 7) by all hours worked in Week 7 in order to evaluate his minimum wage claim. In support, Plaintiff misreads 29 C.F.R. § 778.103 and § 111, both of which relate to overtime calculations (not minimum wage).

Section 778.103 provides merely that an employee's entitlement to overtime is measured on a workweek basis. 29 C.F.R. § 778.103. Section 778.111 similarly focuses on overtime and states that an employee's regular rate of pay for the purposes of calculating overtime "is computed by adding together total earnings for the workweek from piece rates and all other sources (such as production bonuses) and any sums paid for waiting time or other hours worked (except statutory exclusions)." 29 C.F.R. § 778.111. Nothing in either section requires employers to artificially split the earnings from a single trip across two workweeks when the trip spans a workweek boundary.

To the contrary, Defendant's payroll practice—paying trip earnings in the week in which the trip is completed but allocating those earnings among all hours spent earning the compensation—is a valid methodology that Plaintiff admitted he understood. *See* Plaintiff Br. 12-13 (admitting that Defendant does not pay a trip until it is completed). And that structure is consistent with both §§ 103 and 111, because it focuses on the compensation earned for each

workweek and is not tied to the amount paid at the end of the week. The correct divisor for Week 7's pay is the number of hours worked to *earn* the Week 7 compensation (the hours spent completing trips that ended on May 9 and May 11). The compensation *earned* for the work performed on May 13 and May 14 was promptly paid in Week 8 when that trip was completed and it became calculable. Those hours should thus be included in the Week 8 pay divisor.

The FLSA's regulations expressly allow payment of overtime (and by implication, minimum wage) to be delayed when "the correct amount of overtime compensation cannot be determined until some time after the regular pay period" as long as the payment is not "delayed beyond the next payday after such computation can be made." 29 C.F.R. § 778.106. Here, Plaintiff's trip pay for a trip beginning in one week could not be determined until it was completed in the next week, after which it was promptly paid. Plaintiff offers no argument or evidence that such an arrangement violates the FLSA.

Critically, Plaintiff offers no argument that the amount paid in Week 7 was not enough to compensate him for the hours worked through May 11 or that the amount paid in Week 8 was not sufficient to satisfy minimum wage requirements for the hours worked on May 13, on May 14, and in the remainder of Week 8.

Ultimately, Plaintiff claims that NCI's allocation is unlawful because "it omitted two days of concededly work-related trip and failed to allocate the trip's mileage earnings and compensable hours between the two workweeks in which the work occurred." Plaintiff Br. at 39. But Plaintiff's argument asks this Court to artificially disassociate the hours worked from the amounts earned for those hours. The regulations forbid it.

### B. Plaintiff's Recalculation of His Compensation for Week 5 Is Not Material Because There Is No Dispute that Plaintiff Worked—at Most—Fewer than Forty Hours in That Week.

Plaintiff argues that $50 of the $150 in breakdown pay attributable to April 29-May 1 should be allocated to Week 6 (starting May 1) rather than Week 5. Accepting Plaintiff's proposed reallocation does not establish a minimum-wage violation. Plaintiff's own brief acknowledges that the "corrected" Week 5 compensation would be $365.60—still sufficient for minimum wage unless Plaintiff worked more than approximately at least 50.43 compensable hours during that week. As detailed in NCI's initial brief, plaintiff worked—at most—fewer than forty hours during that week. *See* NCI Br. at 27-28. And those calculations are based on *Plaintiff's own estimates* of the length each activity, coupled with documents and testimony regarding his work activities during the week. *See* NCI Br. at 25-26.

Plaintiff offers no rebuttal to this evidence beyond his declaration that he worked "approximately 70 hours per week" based on seven ten-hour work days per week. As described below, that generalized estimate is unsupported by any evidence or attempt to rebut the estimates he provided in his deposition. A round-number estimate, standing alone, is insufficient to defeat a motion for summary judgment on a quantified legal threshold. *Allen v. Coil Tubing Servs., L.L.C.*, 846 F. Supp. 2d 678, 688 (S.D. Tex. 2012). And even if his estimate is credited, it is undisputed that Plaintiff worked only five days in Week 5. Thus, Plaintiff's estimate of ten hours per day (totaling 50 hours) still falls short of showing a minimum wage violation.

### C. Plaintiff's Hours Estimate Does Not Create a Genuine Dispute.

Plaintiff relies on *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680 (1946), for the proposition that his sworn estimate of 70 hours per week suffices to defeat summary judgment. *Anderson*'s relaxed-burden rule applies to the calculation of damages when an employer has failed

to keep adequate records of hours worked. And—even in the context of damages—that burden-shifting framework does not excuse a plaintiff from tethering his estimate to specific, workweek-level evidence. Instead, it requires that the employee "produce sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." *Id.* at 687. And when the employee meets that burden, an employer can still provide "evidence to negative the reasonableness of the inference to be drawn from the employee's evidence." *Id.* at 687-88.

The *Anderson* framework applies differently to the liability question and the damages question. The Sixth Circuit in *Viet v. Le*, 951 F.3d 818 (6th Cir. 2020), and the Seventh Circuit in *Osborn v. JAB Mgmt. Servs., Inc.*, 126 F.4th 1250 (7th Cir. 2025), have both recently explained that the relaxed just and reasonable inference standard applies to damages questions *only after an employee has first met the initial burden of establishing liability* (that is, that the employee actually performed uncompensated work). For this threshold question of whether the plaintiff worked overtime at all, the ordinary burden of proof under Rule 56 governs. *See Viet*, 951 F.3d at 822-23.

This distinction is significant. Plaintiff's bare declaration that he "worked 70 hours each week" is being offered in opposition to summary judgment to establish liability (that he worked too many hours to be have been paid minimum wage), not damages (the extent of those hours). Under the ordinary Rule 56 standard, the plaintiff must identify specific facts, as opposed to general allegations, establishing the disputed liability element. *See Viet*, 951 F.3d at 823 ("Generally speaking, if an employee describes a specific work schedule exceeding 40 hours, courts have found the testimony sufficient. If, by contrast, the employee testifies generically that the employee worked overtime without providing details to support this claim, courts have found that the testimony falls short.").

Plaintiff's blanket 70-hour estimate for "every week except the first" is not tied to any specific week, any specific day, or any specific activity. It is the paradigmatic "conclusory" and "unsubstantiated" assertion that cannot satisfy the non-movant's burden when addressing liability under Rule 56. See *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (quotations omitted); *Kibodeaux v. A&D Ints., Inc*., No. 3:20-CV-00008, 2022 WL 980354, at *11 (S.D. Tex. Mar. 31, 2022) ("Hoffmeister's equivocal claim that she "work[ed] more than 40 hours *some* weeks" hits the trifecta—it's bare, speculative, and vague—and is certainly not sufficient to show the amount and extent of overtime she allegedly worked as a matter of just and reasonable inference."); *see also Osborn*, 126 F.4th at 1260 ("Because Osborn's evidence of her daily schedule lacks specificity and suffers from inconsistencies, we are left to speculate as to how many hours she worked per week. A jury would be left guessing too. Speculation will not do.").

To the contrary, NCI's records—trip envelopes, dispatch touch points, payroll settlements—provide a contemporaneous, documentary basis for the hours attributable to each workweek. In its opening brief, NCI combined those calculations with Plaintiff's own testimony about how long his work activities took, conservatively providing every inference to Plaintiff. Thus, NCI's assertions of the hours worked, which Plaintiff derides as derived "merely from dispatch departure and arrival entries," are actually based on specific documents and generous assumptions from Plaintiff's detailed testimony about how long his work tasks took. If Plaintiff has evidence that he worked more on any day during the relevant time period, he failed to provide it, and Plaintiff's round estimate does not create a genuine dispute with those estimates.

### D. Plaintiff Fails to Identify Any Compensable Time that Went Unpaid and Resulted in a Minimum Wage Violation.

Plaintiff argues that summary judgment is not appropriate because some of the time he was "not under a load" is compensable, listing a series of activities that could have occurred and been

compensable. But Plaintiff does not present any evidence that he actually spent any time in compensable work that went unpaid or that was excluded from the calculations in NCI's opening brief.

Instead of providing evidence of compensable activities, Plaintiff takes the incredible position that "all of Plaintiff's time was compensable" because he was required to attend to Defendant's property. This argument is conclusory and unsupported. There is no evidence of how burdensome that "attending" was. Instead, there is Plaintiff's own admission that he could use the time for his own purposes and was only limited on how far he could drive the truck for personal errands. Plaintiff Dep. 86:16-88:23; App. 277-79. And in rebuttal, Plaintiff offers merely the legal conclusion that he was "not off duty" in his declaration without any facts to explain what restrictions were on him to convert non-working time to work. *See* Plaintiff Dec. ¶¶ 24-26 (Dkt. No. 46, at 3).

Plaintiff offers no evidence that he was actually required to remain with the truck, that dispatch directed him to stay with the vehicle, or that Defendant constrained his freedom during any specific non-loaded interval. His declaration statement that he "does not ever recall having a time where he went more than 24 hours without being assigned a load" is irrelevant. The question is not whether loads were frequent, but whether Plaintiff was "completely relieved" during any intervening period. That question turns on facts—dispatch records, trip envelopes, deposition testimony—that Defendant has produced and Plaintiff has not meaningfully contested. And during his deposition, the only limit on what he could do when he was off duty was based on how far he could drive the NCI truck for a personal reason. Plaintiff Dep. 88: 15-23 (Dkt. No. 47 at 88).

### E. The Alleged Deficiency in the Week 8 Arithmetic Does Not Create a Genuine Dispute.

Plaintiff's observation that 1,315 miles × $0.40 = $526, not $546, is mathematically correct but legally immaterial. The $20.00 difference was stop pay, separately identified in Defendant's evidence and independently earned under the applicable accessorial pay policy. *See* Plaintiff Br. 45 (Plaintiff admits the $20 stop pay policy). Whether $546 is denominated as "$526 mileage + $20 stop pay" or presented as a single line item does not affect the total compensation earned in Week 8 or the minimum-wage calculation. And even if the $20 were excluded, Plaintiff would still have earned minimum wage in Week 8.[3]

## IV. PLAINTIFF'S RETALIATION CLAIM FAILS BECAUSE PLAINTIFF ADMITTED HE VOLUNTARILY QUIT AND NO ADVERSE ACTION FOLLOWED HIS ALLEGEDLY PROTECTED COMPLAINT.

### A. Plaintiff's Own Sworn Testimony Establishes He Voluntarily Quit

To survive summary judgment on his FLSA retaliation claim, Plaintiff must identify evidence sufficient for a reasonable jury to find an adverse employment action. *Hagan v. Echostar Satellite, L.L.C.*, 529 F.3d 617, 624 (5th Cir. 2008). Plaintiff acknowledges that he testified: "I quit"; he saw no money in his account; he turned his phone down; he drove home; he removed his belongings; and he told management he was "done." These admissions are not disputed—Plaintiff's opposition acknowledges them in full.

Plaintiff's argument rests entirely a statement that "Defendant terminated Plaintiff's employment." Plaintiff contends this creates a conflict sufficient to send the case to a jury. It does not. Under Fifth Circuit law, a court may grant summary judgment even in the face of conflicting

[3] Plaintiff's Brief includes a confusing paragraph at the bottom of page 42 that appears to confirm that the deductions from Plaintiff's pay for wage advances does not affect his minimum wage, acknowledging that minimum wage compliance is based on gross wages. To the extent this is intended as an argument in opposition to summary judgment, it is not properly developed with citations to any law or fact.

sworn statements when the conflict is so one-sided that no reasonable jury could return a verdict for the non-moving party. See *Little*, 37 F.3d at 1075. Here, the undisputed documentary and testimonial evidence—including Plaintiff's own sworn deposition testimony that he quit—is overwhelming. Defendant's administrative notation that it processed the separation as a "termination" following Plaintiff's job abandonment describes the procedural consequence of Plaintiff's choice to abscond with NCI's truck, not a contested decision by Defendant to take adverse action against an employee.

And even if this Court were to find that there is a dispute over whether he quit or was terminated—and it should not—the timing is still dispositive because Plaintiff complained about pay for the first time *after* driving off with NCI's truck and at the same time he communicated his intention to quit. Plaintiff Dep. 52:13-53:18, App. 273-74; Plaintiff Dep. 189:5-23, App 288; Plaintiff Dep. 190:7-12, App. 289. So, if NCI had already decided to terminate Plaintiff before he communicated his decision to quit, then that decision was necessarily made *before* any protected activity. "It is axiomatic that an adverse employment action cannot serve as the basis for a retaliation claim if the retaliatory action took place prior to the protected activity." *Valdez v. Wells Fargo Advisors, LLC*, No. 23 CV 7279 (VB), 2026 WL 821431, at *12 (S.D.N.Y. Mar. 25, 2026) (quotation omitted).

**B. Defendant's Post-Separation Accident Report Was Lawful and Not Retaliatory.**

Plaintiff argues separately that Defendant's reporting of the April 29, 2023, dropped-trailer incident to the third-party driver database constitutes a distinct retaliatory act. This claim fails for multiple independent reasons.

First, it is undisputed that Defendant's submission of the driver history report was consistent with its standard practice. Defendant's undisputed evidence establishes that it reports

driver information—including all accident records—to the third-party database whenever any driver's employment ends, regardless of the reason for separation. *See* Plaintiff Br. 33 (Plaintiff admits this practice). There is nothing suspicious or irregular about a routine, policy-driven submission that Defendant makes for every departing driver and therefore no causal link necessary to support a prima facie case of retaliation. Where an administrative step is triggered by the termination itself (not by the employee's protected activity), the protected activity cannot be the but-for cause of the administrative step. *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, (2013).

Second, the accident was accurately reported as non-preventable and non-DOT recordable. *See* Plaintiff Br. 29. These classifications—the most favorable designations available—undermine any inference that Defendant reported the incident to harm Plaintiff. A report that affirmatively exonerates the driver cannot be an adverse employment action directed at that driver.

Third, Plaintiff admits that the dropped-trailer incident did not result in any discipline, was not held against him, and was classified as non-preventable. The argument that Defendant chose to "report" an incident it had "initially decided not to report" is unsupported by any admissible evidence in the record. Plaintiff admits that Defendant recorded the incident in its internal tracking system the morning after it occurred, *see* Plaintiff Br. 28, which was consistent with its policy to promptly record all incidents, *see id.*. It was this initial decision to record the accident that resulted in its later reporting upon termination.

Fourth, temporal proximity alone cannot establish causation when the protected complaint and the alleged adverse act occurred on different days for independent, documented reasons. Plaintiff's wage complaint did not cause Defendant to process the end-of-employment database submission; that submission was triggered by the separation, which Plaintiff himself initiated.

### C. Plaintiff Cannot Satisfy the Prima Facie Causation Element or Show Pretext.

Even if the Court were to find a genuine dispute about whether the separation was a termination rather than a resignation, Plaintiff cannot show the requisite causal link. The Fifth Circuit requires more than temporal proximity where the employer has established a legitimate, non-retaliatory reason for the action and the employee's own conduct precipitated the events in question. *See Starnes v. Wallace*, 849 F.3d 627, 632 (5th Cir. 2017). Plaintiff's unauthorized bobtailing, load abandonment, refusal to communicate, extended absence, and plain statement that he was quitting are all documented and admitted to by Plaintiff—and all preceded his wage complaint. No reasonable jury could find that Defendant acted in retaliation when it administratively processed the inevitable administrative consequences of Plaintiff's walkout the day after he quit.

Nor has Plaintiff presented any evidence that NCI's decision to accept his resignation based on his job abandonment was pretext for retaliation. For example, there is no evidence of any comparators being treated more favorably or of other employees who were treated poorly after complaining about compensation. Plaintiff offers no evidence that any member of NCI's management made any disparaging comments to him about his wage complaint. *See Kwong v. Am. Flood Rsch., Inc.*, 132 F. App'x 18, 21 (5th Cir. 2005) (affirming summary judgment where there was no evidence that termination based on job abandonment was pretext for retaliation).

## V. CONCLUSION

For the foregoing reasons, NCI respectfully requests that this Court grant its motion for summary judgment in its entirety, dismissing all claims asserted by Plaintiff Darrin James Tiernan with prejudice.

Respectfully submitted,

Dated: August 10, 2026

*<u>/s/ Andrew J. Weissler</u>*

Cooper R. Page, #24118728
HUSCH BLACKWELL, LLC
1900 N. Pearl Street, Suite 1800
Dallas, TX 75201
Telephone: (214) 999-6146
Fax: (214) 999-6170
Email: cooper.page@huschblackwell.com

Andrew J. Weissler, admitted *pro hac vice*
HUSCH BLACKWELL LLP
4801 Main Street, Suite 1000
Kansas City, MO 64112
Telephone: 816.983.8123
Fax: 816.983.8080
Email: aj.weissler@huschblackwell.com

*Attorney for Defendants National Carriers, Inc.*

## **CERTIFICATE OF SERVICE**

I hereby certify that on August 10, 2026, I will electronically file the foregoing with the Clerk of the Court using the ECF system, which will send notice of such filing to all attorneys of record in this matter.

*/s/ Andrew J. Weissler*___________________